IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSSETS

| | | |
|---|---|---|
| ROY STANLEY and GAIL STANLEY, | ) | |
| individually and on behalf of | ) | |
| others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. |
| | ) | JURY DEMAND |
| v. | ) | |
| | ) | |
| AMERICAN ECONOMY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

NOW COME Plaintiffs Roy Stanley and Gail Stanley (collectively "Plaintiffs"), individually and on behalf of others similarly situated, for their Class Action Complaint against Defendant American Economy Insurance Company ("Defendant" or "American Economy"), state and allege the following:

### OVERVIEW OF CLAIMS

1.    This is a class action lawsuit arising out of a dispute between policyholders and their property insurer, American Economy. The seminal legal dispute before the Court is whether future labor, yet to be incurred, may be withheld by American Economy as "depreciation" when American Economy calculates and pays its actual cash value ("ACV") payment obligations for structural property losses.

2.    This lawsuit addresses only the cost of future repair labor required to fix a building or structure. This lawsuit does *not* seek to address the propriety of depreciating any labor incorporated or embedded within a building product. Plaintiffs do not dispute that both labor and materials incurred to create a building product (such as a shingle or piece of siding) become

integrated with the product and may be depreciated as part of the calculation of ACV benefits. *See Walker v. Auto-Owners Ins. Co.*, 517 P.3d 617, 620 n.2 (Ariz. 2022).

3.      Future labor is at issue because, pursuant to American Economy's property insurance policy forms at issue, ACV payments are to be made prospectively, that is, prior to the policyholder undertaking repairs to damaged buildings and structures. In contrast to ACV coverage, replacement cost value ("RCV") coverage payments are made retrospectively, after repairs have been completed.

4.      Most property insurers do not withhold future labor under the auspice of "depreciation" when making ACV payments for structural loss claims. However, some property insurers do withhold future labor as depreciation when making ACV payments for structural loss claims but only pursuant to the terms of their insurance policies, which expressly permit future labor to be withheld—*i.e.*, a policy that expressly uses the terms "labor" and "depreciate" or "depreciation," and addresses the issue within the text of the form or endorsement. Others, such as American Economy, withhold future labor as depreciation even under policies that do not contain such provisions. The American Economy policy at issue did not include any provision or language that allowed it to withhold labor as depreciation when making ACV payments for structural loss claims.

5.      Property insurers within the Liberty Mutual Group, including American Economy, have faced repeated lawsuits around the country concerning their practice of depreciating future labor from ACV payments. *See, e.g., Fassina, et al. v. Liberty Mut. Fire Ins. Co., et al.*, Case No. 1:22-cv-11466 (D. Mass.); *Glasner, et al. v. Am. Economy Ins. Co., et al.*, Case No. 1:21-cv-11047 (D. Mass.); *Whiting v. Liberty Ins. Corp.*, Case No. 2:23-cv-04169 (W.D. Mo.); *Shulte, et al. v. Liberty Ins. Corp., et al.*, Case No. 3:19-cv-00026 (S.D. Ohio); *Carter, et al. v. Safeco Ins. Co. of*

*Ind., et al.*, Case No. 3:20-cv-00002 (S.D. Ohio); *Holmes, et al. v. LM Ins. Corp., et al.*, Case No. 3:19-cv-0466 (M.D. Tenn.); *Northside Church of Christ v. Ohio Sec. Ins. Co.*, Case No. 3:20-cv-00184 (M.D. Tenn.); *Aqeel, et al. v. Liberty Ins. Corp., et al.*, Case No. 3:21-cv-00181 (M.D. Tenn.); *Cortinas, et al. v. Liberty Mut. Pers. Ins. Co., et al.*, Case No. 5:22-cv-00544 (W.D. Tex.). While some of these cases are still pending, the cases that have been resolved resulted in Liberty Mutual Group insurers ceasing the practice or engaging in the practice only under policies that contain a labor depreciation permissive form in the state(s) at issue in those cases.

6.     American Economy calculates ACV under the "replacement cost less depreciation" ("RCLD") methodology. When calculating ACV for buildings and structures under the RCLD methodology, American Economy estimates the full amount of labor and new materials required to repair or replace the property, and then subtracts depreciation for physical deterioration.

7.     Courts in several jurisdictions hold that the RCLD methodology is reasonably intended to result in an ACV payment to the policyholder in an amount that allows the policyholder to return the damaged property to its *status quo ante*, thereby precluding the withholding of labor from ACV payments. *See generally Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 706-07 (5th Cir. 2020).

8.     This lawsuit concerns the withholding of certain labor that American Economy, through its computerized claims estimating software, itself determined will be incurred if the policyholders undertake repairs. However, this lawsuit does *not* concern labor that is expressly permitted to be withheld under the express terms of American Economy's insurance policies.

9.     Property insurers attach different labels to justify the withholding of certain labor from ACV payments, such as "paid when incurred" or "labor depreciation." *E.g., Mills v. Foremost Ins. Co.*, 511 F.3d 1300 (11th Cir. 2008) (property insurer cannot withhold labor from ACV

payments because it has not been incurred); *Mitchell*, 954 F.3d at 706-07 (property insurer cannot withhold ordinary labor from ACV payments under the auspice of "depreciation").

10.     Regardless of the artificial label affixed by the property insurer to the practice of withholding future repair labor from an ACV payment, the result is the same—namely, a deficient ACV payment. This lawsuit seeks to remedy the improper withholdings of future labor from Plaintiffs' and putative class members' ACV payments.

11.     The laws in Alabama, Arizona, California, Connecticut, Illinois, Kentucky, Maryland, Mississippi, Missouri, Ohio, Tennessee, Texas, Utah, Vermont, Virginia, Washington, and Wisconsin are materially identical as they relate to the contractual dispute set forth herein, or at the least, any differences would be manageable in the class context. *See Fassina v. Liberty Mut. Fire Ins. Co.*, Case No. 22-cv-11466 (D. Mass. Mar. 8, 2024) (*Fassina* Dkt. 71, at 16) (denying defendants' Rule 12(b)(1) motion and recognizing the "laws of Alabama and Maryland, where the class representatives' claims arose, are sufficiently parallel to the laws of the fifteen states where their claims did not arise—Arizona, California, Connecticut, Illinois, Kentucky, Mississippi, Missouri, Ohio, Tennessee, Texas, Utah, Vermont, Virginia, Washington and Wisconsin"); *Glasner v. Liberty Mut. Fire Ins. Co.*, Case No. 21-cv-11047 (D. Mass. Mar. 8, 2024) (*Glasner* Dkt. 100, at 13) (finding uniformity in the laws of twelve states concerning the plaintiffs' labor depreciation breach of contract claims and noting the "Defendants cannot deny that 'breach of contract' is a legal claim in each state and that the elements of these 'parallel laws' are 'materially the same'"); *see Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 76 (E.D.N.Y. 2004) (involving a 46-state putative class claiming breach of standard form insurance contracts). Specifically, these states are all RCLD states for purposes of determining ACV under property

insurance policies or preclude the depreciation of future repair labor by court decision or state administrative agency.

## PARTIES, JURISDICTION, AND VENUE

12.     Plaintiffs Roy Stanley and Gail Stanley ("the Stanleys") are citizens and residents of DeSoto, Texas. At all times relevant hereto, the Stanleys owned the dwelling and other structures located at 939 Aspen Drive, DeSoto, TX (the "Insured Stanley Property").

13.     Defendant American Economy is an insurance company organized and existing under the laws of the State of Indiana with its principal place of business in Boston, Massachusetts. American Economy is authorized to sell property insurance policies for buildings and structures in several states, specifically including the states of Alabama, Arizona, California, Connecticut, Illinois, Kentucky, Maryland, Mississippi, Missouri, Ohio, Tennessee, Texas, Utah, Vermont, Virginia, Washington, and Wisconsin.

14.     American Economy is a wholly owned subsidiary of Liberty Mutual® Holding Company, Inc. ("Liberty Mutual"), which owns and controls the Defendant and is headquartered at 175 Berkley Street, Boston, Suffolk County, Massachusetts.

15.     American Economy engaged in the contractual breaches described herein in a uniform manner and pursuant to a uniform policy. Property insurers within the Liberty Mutual Group collectively operate a centralized claims adjustment operation in which their adjusters work on claims for multiple different entities, including the Defendant, using the same policies and procedures that breached the policy provisions at issue in this case for adjusting and paying insurance claims.

16.     On information and belief, this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). There are more than 100 members in the proposed

class, at least one member of the proposed class has state citizenship that is different from the Defendant, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and more than one-third of the members of the proposed class reside outside of Massachusetts.

17.    This Court has personal jurisdiction over American Economy as its principal place of business is located in the eastern division of this Judicial District.

18.    Venue is proper in this forum pursuant to 28 U.S.C. § 1391(d).

19.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring contractual and declaratory relief claims on behalf of themselves and a putative class of American Economy's property insurance policyholders who are similarly situated.

## FACTS

### A.    Introduction and Scope of Lawsuit

20.    American Economy sells property insurance coverage for, *inter alia*, residential and commercial buildings and structures across the United States, specifically including the states of Alabama, Arizona, California, Connecticut, Illinois, Kentucky, Maryland, Mississippi, Missouri, Ohio, Tennessee, Texas, Utah, Vermont, Virginia, Washington, and Wisconsin.

21.    American Economy's property insurance forms sold in Alabama, Arizona, California, Connecticut, Illinois, Kentucky, Maryland, Mississippi, Missouri, Ohio, Tennessee, Texas, Utah, Vermont, Virginia, Washington, and Wisconsin are materially identical as they relate to the contractual dispute set forth herein.

22.    This lawsuit only concerns property coverage for buildings and structures, and not personal contents, such as furniture and clothes.

23.    This lawsuit only concerns ACV coverage and ACV payments.

24.     Further, this lawsuit only concerns claims in which American Economy accepted coverage and then chose to calculate its ACV payment obligations exclusively pursuant to the RCLD methodology, as opposed to a fair market value approach.

25.     Further, this lawsuit only concerns future repair labor. This lawsuit does not contest that labor used to make a building product (such as a shingle or electrical outlet) become "embedded" within the building product or building and can be depreciated as part of an ACV calculation.

**B.     The Stanleys' Insurance Policy and Loss**

26.     The Stanleys contracted with American Economy for an insurance policy providing coverage for certain losses to the Insured Stanley Property. The policy number was OY8246428 (the "Stanley Policy").

27.     The Stanleys paid American Economy premiums in exchange for insurance coverage. The required premiums were paid at all times relevant to this Complaint.

28.     On or about May 2, 2022, the Insured Stanley Property suffered damage covered by the Stanley Policy (the "Stanley Loss"). The damage to the Insured Stanley Property required replacement and/or repair.

29.     The Stanleys timely submitted a claim to American Economy requesting payment for the Stanley Loss.

30.     American Economy determined the Stanley Loss to the Insured Stanley Property was covered by the terms of the Stanley Policy.

31.     At all relevant times, American Economy's methodology for calculating the ACV of structural damage losses, including the Stanley Loss, was to estimate the cost to repair or replace the damage with new materials (the RCV), and then to subtract the estimated depreciation.

32.    The Stanleys do not dispute the amount of loss as determined by American Economy. Instead, the Stanleys dispute only whether American Economy's withholding of future repair labor (as that amount was calculated by American Economy itself) breaches the terms and conditions of their policy, and if so, whether they are entitled to interest during the period of withholding.

33.    The Stanley Policy, and the other property forms issued by American Economy to putative class members, do not permit the withholding of labor as depreciation as described below. In contrast with the Stanley Policy, certain policies of insurance expressly allow for the depreciation of "labor" as described herein. That type of form or endorsement will be referred to as a "labor depreciation permissive form."

34.    The Stanley Policy does not contain a labor depreciation permissive form.

**C.    American Economy's Calculation of Plaintiffs' ACV Payments**

35.    In adjusting Plaintiffs' claims, consistent with the Stanley Policy, American Economy affirmatively and unilaterally chose to use the RCLD methodology to calculate the loss and make Plaintiffs' ACV payments. American Economy did not use any other methodology to calculate Plaintiffs' ACV payments.

36.    American Economy did not calculate any portion of Plaintiffs' loss by reference to or analysis of any alleged increase or decrease in the market value of their property, or the market value of any portion of their property.

37.    American Economy did not conduct an appraisal of Plaintiffs' loss.

38.    American Economy did not conduct an appraisal of Plaintiffs' insured property.

39.    By the express terms of the policy and its own actions in adjusting Plaintiffs' claim and the claims of the putative class through use of the RCLD methodology for calculating ACV,

American Economy has waived, and is estopped from asserting, any right to contend that ACV should have been calculated under any methodology other than the RCLD methodology.

40.     After Plaintiffs' loss, American Economy sent an adjuster to inspect the insured property and estimate the ACV amount.

41.     American Economy used commercially available computer software to estimate Plaintiffs' RCV, depreciation, and ACV calculations. The software used to calculate the ACV payments to Plaintiffs is called Symbility®.

42.     As set forth in the written Symbility® estimates provided to Plaintiffs, American Economy determined that Plaintiffs had suffered covered losses to the insured property. The Symbility® estimates generated by American Economy included the estimated cost of materials and future labor required to complete the repairs (the RCV).

43.      In calculating its ACV payment obligations to Plaintiffs, American Economy used Symbility® to determine the depreciation to subtract from the RCV amount.

44.     Plaintiffs were underpaid on their ACV claim and deprived of the use of their money from the time they should have received full ACV payment until the date they recovered the wrongfully withheld amounts, as more fully described below.

**D.     American Economy's Practice Of Withholding Future Labor As Depreciation**

45.     For Plaintiffs and putative class members, American Economy used Xactimate® or Symbility® software to calculate ACV payments. Xactimate® and Symbility® are used by both insurers and contractors to calculate the cost of rebuilding or repairing damaged property and are also used to calculate depreciation to determine ACV payments under the RCLD methodology.

46.     The only methodology used by Xactimate® and Symbility® to calculate ACV payments for structural damage is the RCLD methodology. Neither Xactimate® nor Symbility®

use other methodologies to calculate ACV, such as, *e.g.*, the calculation of ACV through a fair market value as determined by a real estate appraisal.

47.     Because Xactimate® and Symbility® do not use any methodology to calculate ACV other than "replacement cost less depreciation," a property insurer only makes an ACV payment through Xactimate® or Symbility® after the property insurer itself has affirmatively determined and agreed to use the RCLD methodology.

48.     American Economy unfairly manipulates the claims estimating software to withhold future labor from ACV payments and did so when issuing payments to Plaintiffs and the putative class members.

49.     Xactimate® and Symbility® generate estimate prices from their ongoing fair market pricing research. The price lists are both temporal (*e.g.*, monthly) and geographic (*e.g.*, city or region).

50.     When adjusting property insurance claims with Xactimate® or Symbility®, the adjuster inputs, among other information, the dimensions of the damaged property, the damaged portion of the damaged property, and other objective information such as the age of the roofing, siding, or other damaged building materials.

51.     The claims estimating software then breaks down each individual necessary step in the repair process into an individual "line item." Each line item has a specific dollar value. The line items are totaled to obtain the RCV values, and then depreciation is applied.

52.     Xactimate® and Symbility® can be manipulated to withhold labor from ACV payments by simply checking or unchecking certain boxes concerning depreciation. For example, the following screenshot from the Symbility® program's option settings allow the software to select depreciation to apply to "labor," "equipment," and/or "overhead and profit," which will

result in the withholding of labor from an ACV payment. In contrast, selecting the setting for "materials" only will not result in the withholding of labor from an ACV payment. Symbility® is the software utilized by American Economy to calculate the ACV amounts owed to Plaintiffs.



Likewise, the below screenshot from the Xactimate® program shows that the insurer can choose to select or de-select "Depreciate Non-Material," "Depreciate Removal," and/or "Depreciate Overhead and Profit," all of which are labor items, and all of which will result in the withholding of labor from an ACV payment.



53.    Plaintiffs had labor withheld from their ACV payments due to American Economy's manipulation of claims estimating software as alleged above.

54.     When American Economy calculated Plaintiffs' ACV benefits owed, American Economy withheld costs for both the materials and future labor required to repair Plaintiffs' property as depreciation, even though labor does not depreciate in value over time. American Economy withheld labor costs as depreciation throughout its ACV calculations as depreciation.

55.     In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including the labor costs, the laborers' equipment costs, and the contractors'/laborers' overhead and profit necessary to restore property to its condition *status quo ante*, as well as removal costs to remove damaged property, under commercial claims estimating software.

56.     American Economy's withholding of future labor costs as depreciation resulted in Plaintiffs receiving payments in an amount less than they were entitled to receive under their policy. American Economy breached its obligations under Plaintiffs' policy by improperly withholding the future cost of labor as depreciation.

57.     Without expert assistance, Plaintiffs themselves cannot determine the precise amount of labor that has been withheld based only upon the written estimates provided. To determine the precise amount of labor withheld, it is necessary to have access to the commercial property estimating programs at issue (Xactimate® and Symbility®), as well as the electronic files associated with the respective estimates.

58.     While a property insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold labor as depreciation under the policy forms at issue when the carrier chooses to use a RCLD methodology.

59.    American Economy's failure to pay the full cost of the labor necessary to return Plaintiffs' property to the *status quo ante* left Plaintiffs under-indemnified and underpaid for their loss.

60.    Future labor that has not yet been incurred, by its nature, does not depreciate, and an insurer therefore may not withhold future labor as depreciation.

61.    American Economy materially breached its duty to indemnify Plaintiffs by withholding future labor costs associated with repairing or replacing the insured property from ACV payments as depreciation, thereby paying Plaintiffs less than they were entitled to receive.

62.    Plaintiffs have no individual claim disputes unrelated to the subject matter of labor depreciation. Plaintiffs' sole dispute is whether portions of the agreed-to and undisputed amounts of future labor, as determined by American Economy itself, may be withheld by American Economy as "depreciation" from American Economy's ACV payments under the terms and conditions of the insurance policies, including but not limited to depriving Plaintiffs of the time use of money resulting from the periods of labor withholding in the form of prejudgment interest.

63.    Plaintiffs do not dispute the amount of loss determined by American Economy. Instead, they agree with the RCV calculated by American Economy, and do not dispute American Economy's valuations of materials or labor. Plaintiffs solely dispute that, under the terms of their policy, American Economy can withhold future repair labor from an ACV payment as "depreciation." American Economy's unlawful act in withholding future labor as "depreciation" can be remedied by simply re-calculating ACV after selection of the correct depreciation option settings in Symbility® or Xactimate®.

64.     As damages, Plaintiffs and members of the putative class seek the amount of labor depreciation still withheld from their ACV payments as that undisputed amount was determined by American Economy itself, plus interest during the period of withholding.

65.     To calculate this amount, all that is necessary is to change the Xactimate® or Symbility® depreciation option settings (as noted above) so that labor depreciation is no longer subtracted from the RCV estimates.

66.     Multiple insurance companies have performed this correction for thousands of policyholders' claims around the country. *See*, *e.g., Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 456 (6th Cir. 2020). These corrections have been made by internal adjusters (not outside appraisers) by simply toggling the Xactimate® or Symbility® depreciation option settings. This is an efficient and accurate process and does not require an appraisal.

67.     In *Hicks*, the Sixth Circuit described State Farm's toggling labor depreciation refund program as follows: "After Xactimate revised the estimates using the updated formula (RCV — material costs depreciation), State Farm issued payments to the insureds to refund the previously depreciated labor costs." *Id*. at 457. The Sixth Circuit noted that "[n]o one at State Farm questioned the accuracy of the disbursed payments, and [State Farm's manager who oversaw the program] testified that he was pleased by the program's efficiency. State Farm records show that it took an average of '15 minutes' to complete each review." *Id*. The Sixth Circuit also observed that "[m]ost policyholders refunded by the program received payments of less than $1,000, and many received payments for amounts less than the fee for filing suit in state court." *Id*.

## AMOUNT IN CONTROVERSY

68.     Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

14

## CLASS ACTION ALLEGATIONS

69.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this lawsuit as a class action on behalf of themselves and on behalf of all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation. Only to the extent it is a requirement under applicable law, the proposed class herein is ascertainable.

70.     The proposed class that Plaintiffs seek to represent is tentatively defined as follows:

All American Economy policyholders (or their lawful assignees) who made:

(1) a structural damage claim for property located in Alabama, Arizona, California, Connecticut, Illinois, Kentucky, Maryland, Mississippi, Missouri, Ohio, Tennessee, Texas, Utah, Vermont, Virginia, Washington, or Wisconsin; and

(2) for which American Economy accepted coverage and then chose to calculate actual cash value exclusively pursuant to the replacement cost less depreciation methodology and not any other methodology, such as fair market value; and

(3) which resulted in an actual cash value payment during the class period from which non-material depreciation was withheld from the policyholder; or which would have resulted in an actual cash value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible.

In this definition, "non-material depreciation" means the application of the "labor," "equipment," and/or "overhead and profit" depreciation option settings in Symbility® software or the application of "Depreciate Non-Material," "Depreciate Removal," and/or "Depreciate Overhead and Profit" depreciation option settings within Xactimate® software, or any other settings that result in depreciation of future repair labor (including general contractor's overhead and profit, if awarded), and any other similar depreciation option settings in competing commercial software programs.

The class period for the proposed class is the maximum time period as allowed by applicable law.

The class excludes any claims for which the applicable limits of insurance were exhausted by the initial actual cash value payment. The class also excludes any claims arising under labor depreciation permissive forms, *i.e.*, those policy forms and endorsements expressly permitting the "depreciation" of "labor" within the text of the policy form or endorsement.

71.     Plaintiffs reserve the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) American Economy and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed class; and (3) the Court to which this case is assigned and its staff.

72.     Plaintiffs and members of the putative class as defined suffered injury and have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policies. Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policies. However, policyholders who have been subsequently repaid for initially withheld labor costs still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e.*, statutory or common law prejudgment interest on the amounts improperly withheld, for the time period of withholding.

73.     The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe that hundreds or thousands of people geographically dispersed across Alabama, Arizona, California, Connecticut, Illinois, Kentucky, Maryland, Mississippi, Missouri, Ohio, Tennessee, Texas, Utah, Vermont, Virginia, Washington, and Wisconsin have been damaged by American Economy's actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by American Economy or from information readily available to American Economy.

74.     The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

75.     American Economy has acted on grounds generally applicable to the proposed class in that American Economy has routinely withheld labor costs as described herein in its adjustment

of property damage claims under its policies of insurance. It is reasonable to expect that American Economy will continue to withhold labor to reduce the amount it pays to its insureds under these policies absent this lawsuit.

76.    Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

a.    Whether the applicable policy language allows the withholding of future labor costs in the calculation of ACV payments under the RCLD methodology;

b.    Whether the applicable policy language is ambiguous concerning the withholding of future labor costs in calculating ACV payments, and if so, how the insurance policies should be interpreted;

c.    Whether the withholding of future labor costs in the calculation of ACV payments breaches the applicable insurance policies;

d.    Whether American Economy has a custom and practice of withholding future labor costs in the calculation of ACV payments;

e.    Whether Plaintiffs and members of the proposed class have been damaged as a result of the withholding of future labor costs in the calculation of ACV payments; and

f.    Whether Plaintiffs and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

77.    Plaintiffs' claims are typical of the claims of the proposed class members, as they are similarly affected by the customs and practices alleged herein. Further, Plaintiffs' claims are typical of the claims of the proposed class members because the claims arose from the same practices and course of conduct that give rise to the claims of the members of the proposed class

and are based on the same factual and legal theories. Plaintiffs are not different in any material respect from any other member of the proposed class.

78.    Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interests do not conflict with the interests of the proposed class they seek to represent. Plaintiffs have retained lawyers who are competent and experienced in class action and insurance litigation. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation. Plaintiffs reserve the right to have unnamed class members join them in seeking to be class representatives.

79.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

80.    In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary

adjudication with consistent results and equal protection of the rights of Plaintiffs and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

81.    Questions of law or fact common to Plaintiffs and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amount due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief. On the other hand, a class action will serve important public interests by permitting consumers harmed by the unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct. The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

82.    Class certification is further warranted because American Economy has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

83.    Plaintiffs may seek, in the alternative, certification of issues classes. Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

## COUNT I
## BREACH OF CONTRACT

84.     Plaintiffs restate and incorporate by reference all preceding allegations.

85.     American Economy entered into policies of insurance with Plaintiffs and members of the proposed class. These insurance policies govern the relationship between American Economy and Plaintiffs, and members of the proposed class, as well as the manner in which claims for covered losses are handled.

86.     These policies of insurance are binding contracts under applicable law, supported by valid consideration in the form of premium payments in exchange for insurance coverage.

87.     American Economy drafted the insurance policies at issue, which are essentially identical in all respects material to this litigation concerning the withholding of labor as depreciation from ACV payments for structural loss when American Economy calculates ACV under a RCLD methodology.

88.     In order to receive or be eligible to receive ACV payments in the first instance, Plaintiffs and the putative class members complied with all material provisions and performed all their respective duties with regard to their insurance policies.

89.     American Economy breached its contractual duties to pay Plaintiffs and members of the proposed class the ACV of their claims by unlawfully withholding labor as described herein. The only breach alleged in this lawsuit on behalf of Plaintiffs and the putative class is Defendant's unlawful withholding of labor costs in calculating ACV payments due pursuant to the RCLD methodology and in the absence of a labor depreciation permissive form.

90.     In this breach of contract count, Plaintiffs and members of the proposed class do not dispute the amounts of labor calculated by American Economy or any other claim determinations made by American Economy. Rather, Plaintiffs and the putative class only dispute

whether the agreed to and undisputed amounts of future labor, as determined by American Economy itself, may be withheld from Plaintiffs and putative class members as "depreciation."

91.    American Economy materially breached its duty to indemnify Plaintiffs and the putative class members by withholding labor costs from ACV payments as depreciation, thereby paying less than Plaintiffs and the putative class members were entitled to receive under the terms of their policies, including but not limited to depriving Plaintiffs and the putative class members of the time use of money resulting from the time periods of labor withholdings in the form of prejudgment interest.

92.    As a direct and proximate result of American Economy's breach of the insurance policies, Plaintiffs and members of the proposed class suffered damage. More specifically, Plaintiffs and the putative class members received payment for their losses in an amount less than they were entitled to receive under the policies.

93.    American Economy's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and members of the proposed class.

94.    Plaintiffs dispute whether the agreed to and undisputed amount of non-material depreciation as herein defined in the proposed class definition, and as determined by Defendant itself, may be withheld from ACV payments.

95.    Given the foregoing, Plaintiffs and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts unlawfully withheld from their ACV payments, including prejudgment interest for all periods of withholding as may be allowed by law.

96.     Plaintiffs and members of the proposed class seek any and all relief as may be permitted under the applicable law to remedy the breaches of contract.

## COUNT II
## DECLARATORY JUDGMENT AND RELIEF

97.     Plaintiffs restate and incorporate by reference all preceding allegations.

98.     This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

99.     A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

100.    Plaintiffs and members of the proposed class have complied with all relevant conditions precedent in their contracts.

101.    Plaintiffs seek, individually and on behalf of the proposed class, a declaration that American Economy's property insurance contracts prohibit the withholding of future labor costs as described herein when adjusting losses under the methodology employed herein.

102.    Plaintiffs further seek, individually and on behalf of the proposed class, any and all equitable relief available under the law that the Court deems necessary and proper to the administration of justice, including but not limited to, identifying and locating policyholders, and notifying the same of the circumstances complained of and the restoration of their rights and remediation of their losses, and preclusion of American Economy from engaging in the conduct described herein, as may be permitted by law.

103.    Plaintiffs and members of the proposed class have and will continue to suffer injuries.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

1.      Enter an order certifying this action as a class action, appointing Roy Stanley and Gail Stanley as representatives of the class, and appointing Plaintiffs' attorneys as counsel for the class;

2.      Enter a declaratory judgment, declaring that American Economy's withholding of future labor costs as depreciation is contrary to and breaches the insurance policies issued to Plaintiffs and members of the proposed class;

3.      Enter a declaration, and any preliminary and permanent injunction and equitable relief against American Economy and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in the policies, practices, customs, and usages complained of herein concerning the withholding of future labor costs as depreciation, as may be allowed by law;

4.      Enter an order that American Economy specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practice of withholding future labor costs as depreciation, as complained of herein;

5.      Award compensatory damages for all sums withheld as labor depreciation as defined above, plus prejudgment interest on all such sums, to Plaintiffs and members of the proposed class;

6.      Award attorneys' fees, costs, expenses, and disbursements incurred herein by Plaintiffs and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

7.    Pre- and Post-Judgment interest; and

8.    Grant such further and additional relief as the Court deems necessary and proper.

PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES TRIABLE BY JURY

Respectfully submitted,


*/s Jonathan M. Feigenbaum*
Jonathan M. Feigenbaum
B.B.O. #546686
Law Offices of Jonathan M. Feigenbaum
184 High Street, Suite 503
Boston, MA 02110
Tel: (617) 357-9700
Fax: (617) 227-2843
jonathan@erisaattorneys.com

***Attorney for Plaintiffs and***
***Proposed Class Representatives***