UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ROY STANLEY and GAIL STANLEY, individually and on behalf of others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 24-cv-10622-DJC |
| AMERICAN ECONOMY INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |

MEMORANDUM AND ORDER

**CASPER, J.**                                                                                           **February 14, 2025**

## I.     Introduction

Plaintiffs Roy Stanley and Gail Stanley (collectively, "the Stanleys" or "Plaintiffs"), individually and on behalf of others similarly situated, filed this lawsuit against Defendant American Economy Insurance Company ("AEIC"), alleging breach of contract (Count I) and seeking declaratory judgment and relief (Count II). D. 27. AEIC has moved to transfer the case to the Northern District of Texas, D. 22, and to dismiss the first amended complaint ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6), D. 29. For the reasons stated below, the Court DENIES AEIC's motion to transfer, D. 22, and DENIES its motion to dismiss, D. 29.

## II.     Standards of Review

### A.     Motion to Transfer

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses" and "in the interest of justice," a court "may transfer any civil action to any other district . . . where it might have been brought."  The decision to transfer rests within the Court's discretion.  See Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737 (1st Cir. 1977).  The Court need not determine the best venue, but "merely a proper venue."  Astro–Med v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009).

The burden is on the movant to show that transfer is warranted.  Shipley Co., Inc. v. Clark, 728 F. Supp. 818, 823 (D. Mass. 1990).  In considering whether to grant a motion to transfer venue, a district court should consider "(1) the convenience of the parties, (2) the convenience of the witnesses, (3) the relative ease of access to sources of proof, (4) the availability of process to compel attendance of unwilling witnesses, (5) cost of obtaining willing witnesses, and (6) any practical problems associated with trying the case most expeditiously and inexpensively."  F.A.I. Elec. Corp. v. Chambers, 944 F. Supp. 77, 80–81 (D. Mass. 1996) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

### B.     Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal

allegations contained therein.  Id.  Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit.  Id.  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

### III.  Factual Background

#### A.  Materials Outside The Pleadings

At the motion to dismiss stage, the Court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment."  Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001).  "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'"  Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).

Within the category of official public records, "[i]t is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."  Maher v. Hyde, 272 F.3d 83, 86 n.3 (1st Cir. 2001) (quoting Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990)).  The Court, therefore, considers Exhibit D to Plaintiffs' opposition to AEIC's motion to dismiss, D. 32-4 (attaching excerpt of the transcript of an October 7, 2019 hearing before the United States Court of Appeals for the Fifth Circuit).

In addition, the Stanley Insurance Policy, Exhibit 1 to AEIC's motion to dismiss, D. 30-1, can be considered because it is central to Plaintiffs' complaint.  The Court may also consider

3

Exhibit C to Plaintiffs' opposition to AEIC's motion to dismiss, D. 32-3, an endorsement from AEIC's affiliate, because it is filed with the Texas Department of Insurance and is publicly available. See D. 32 at 7 n.9; Lombardo v. CitiMortgage, Inc., No. 18-cv-10299-PBS, 2019 WL 3546630, at *1 (D. Mass. Mar. 4, 2019) (concluding that a party's request to take judicial notice of a public document available from a government website was appropriate). By contrast, an online bulletin regarding Fire, Casualty and Surety Insurance (FC&S), which was not referenced in the FAC, does not fall within any of the exceptions permitting consideration at this stage. Accordingly, the Court has not considered this document, Exhibit B to Plaintiffs' opposition to AEIC's motion to dismiss, D. 32-2.

For the purpose of resolving AEIC's motion to transfer, the Court may consider the facts set forth by the parties. See, e.g., OsComp Sys., Inc. v. Bakken Exp., LLC, 930 F. Supp. 2d 261, 264 (D. Mass. 2013). The Court, therefore, considers the Exhibits to AEIC's memorandum in support of its motion to transfer, D. 23-1; D. 23-2, and the Exhibits to Plaintiffs' opposition, D. 28-1 through D. 28-4, on this basis.

### B. Factual Allegations

The following facts are drawn from the FAC, D. 27, and the aforementioned exhibits, and are accepted as true for the purposes of considering AEIC's motions to transfer and dismiss.

AEIC is a subsidiary of Liberty Mutual® Holding Company, Inc. ("Liberty Mutual"), and is headquartered in Massachusetts. Id. ¶ 14. The Stanleys are citizens and residents of Texas and own a residence in DeSoto, Texas. Id. ¶ 12. On or about May 10, 2021, the Stanleys suffered damage to their property which required replacement and/or repair. Id. ¶ 28. The Stanleys timely submitted a claim to AEIC, their insurer, requesting payment for their loss. Id. ¶ 29. AEIC determined that the loss was covered. Id. ¶ 30.

As alleged, AEIC was required to pay the actual cash value ("ACV") of the property damaged as part of the Plaintiffs' losses, as opposed to the replacement cost value ("RCV") of same. Id. ¶¶ 1, 3. Whereas ACV payments are made prospectively, i.e., prior to the policyholder undertaking repairs to damaged buildings and structures, RCV payments are made retrospectively, after repairs have been completed. Id. ¶ 3. Plaintiffs assert that AEIC calculates ACV under the "replacement cost less depreciation" ("RCLD") methodology, according to which it calculates the full amount of labor and materials necessary to repair or replace the property and then deducts depreciation from that amount. See id. ¶ 6.

To calculate Plaintiffs' ACV payments, AEIC used Xactimate® or Symbility®, computer software programs designed to assist insurers with RCLD calculations. Id. ¶¶ 45–46. Xactimate® and Symbility® generate price estimates based upon a series of inputs, including the dimensions of the damaged property, the damaged portion of the property and other objective criteria like the age or condition of the roofing, siding or other damaged building materials. Id. ¶¶ 49–50. Xactimate® and Symbility® divide each step of the repair process into separate "line items" and allow the insurance adjuster to check or uncheck boxes associated with these line items to account for, and ultimately deduct, depreciation. Id. ¶¶ 51–52. As alleged, some of these checkboxes, such as "Depreciate Material," "Depreciate Removal," and "Depreciate Overhead and Profit," are "labor items," i.e., costs associated with any labor necessary to repair the damaged property. Id. ¶ 52.

Plaintiffs allege that AEIC used these checkboxes to withhold labor costs from their ACV payments. Id. ¶¶ 53–55. This so-called "labor depreciation" results in smaller ACV payments. See id. ¶ 56. As alleged, Plaintiffs' insurance policies do not contain a labor depreciation permissive form, i.e., provisions expressly permitting labor depreciation. Id. ¶¶ 33–34, 70, 89.

5

Plaintiffs assert AEIC's labor depreciation practices have resulted in the underpayment of ACV claims (and, therefore, breaches of contracts) affecting the residents of seventeen states, including their home state of Texas, as well as: Alabama, Arizona, California, Connecticut, Illinois, Kentucky, Maryland, Mississippi, Missouri, Ohio, Tennessee, Texas, Utah, Vermont, Virginia, Washington and Wisconsin. Id. ¶ 70.

The Stanleys' case is not the first to challenge labor depreciation practices. Two similar lawsuits are already before this Court. In Glasner v. Am. Econ. Ins. Co., No. 21-cv-11047-DJC, 2024 WL 1018449, at *2–3 (D. Mass. Mar. 8, 2024), a putative class of Plaintiffs across twelve states challenge AEIC for the same practice they challenge here: withholding labor costs from ACV payments. In Fassina v. Liberty Mut. Fire Ins. Co., No. 22-cv-11466-DJC, 2024 WL 1018440, at *2–3 (D. Mass. Mar. 8, 2024), a putative class of Plaintiffs across the same seventeen states at issue here challenge AEIC's parent company, Liberty Mutual, for this practice. Defendants in both cases moved to dismiss all class action allegations and to preclude the named plaintiffs from seeking class certification. Id. at 1; Glasner, 2024 WL 1018449, at *1. This Court denied both motions, concluding that (1) Article III standing exists for the putative multistate class actions; and (2) there was sufficient uniformity in laws across the states for multistate proceedings to move forward. Fassina, 2024 WL 1018440, at *3–10; Glasner, 2024 WL 1018449, at *3–7.

## IV.   Procedural History

On March 13, 2024, the Stanleys, individually and on behalf of others similarly situated, filed a complaint against AEIC. D. 1. On July 23, 2024, AEIC moved to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), D. 20, and separately moved to transfer the case to the Northern District of Texas, D. 22. On August 13, 2024, the Stanleys, individually and on behalf of all others similarly situated, filed the operative FAC against AEIC.

D. 27. AEIC now has moved to dismiss the FAC for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). D. 29.[1] The Court heard the parties on the pending motions and took the matters under advisement. D. 37.

## V. Discussion

### A. Motion to Transfer

When considering a motion to transfer, a "strong presumption" exists "in favor of the plaintiff's choice of forum." Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000) (citation omitted). Yet the presumption is not dispositive and "may give way to other overriding considerations." Karmaloop, Inc. v. ODW Logistics, Inc., 931 F. Supp. 2d 288, 290 (D. Mass. 2013). Where the forum has no obvious connection to the case or where the plaintiff is not a forum resident, the plaintiff's presumption carries less weight. U.S. ex rel. Ondis v. City of Woonsocket, R.I., 480 F. Supp. 2d 434, 436 (D. Mass. 2007).

When applying 28 U.S.C. § 1404(a), a court weighs public interest and private interest factors. Friends of Animals v. Phifer, No. 15-cv-30011-MGM, 2015 WL 1943898, at *2 (D. Mass. Apr. 29, 2015). Public interest factors include the "statutory consideration of the interest of justice," Phifer, 2015 WL 1943898, at *2, and the "practical difficulties of unnecessarily imposing upon a busy court the obligation to hear a case more fairly adjudicated elsewhere, the imposition on jurors called to hear a case that has no relation to their community, and the familiarity of the court with applicable laws," J.J. Reidy & Co. v. Airwater Corp., No. 05-cv-40049-FDS, 2005 WL 3728726, at *9 (D. Mass. Sept. 27, 2005) (citing Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 719–20 (1st Cir. 1996)). Private interest factors include "the statutory considerations of convenience

---

[1] In light of AEIC's filing of D. 29, its motion to dismiss the amended complaint, its motion to dismiss the original complaint, D. 20, is DENIED as moot.

of the parties and witnesses," Phifer, 2015 WL 1943898, at *2 (quoting Amary v. JPMorgan Chase & Co., No. 12-cv-10777-NMG, 2012 WL 6045980, at *2 (D. Mass. Oct. 18, 2012)) (further citation omitted), and the "relative ease of access to sources of proof, availability of compulsory process, comparative trial costs, ability to enforce a judgment" and any "practical problems that make trial of a case easy, expeditious and inexpensive," J.J. Reidy & Co., 2005 WL 3728726, at *9 (citing Nowak, 94 F.3d at 719–20).   !

As an initial matter, Plaintiffs have raised a fair argument regarding a potential lack of personal jurisdiction over non-Texas class members in Texas, see D. 28 at 9–12. In Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., S.F. Cnty., 582 U.S. 255, 255–69 (2017), the Supreme Court considered state law mass tort claims brought by a group of California and non-California residents against Bristol-Myers, a Delaware corporation headquartered in New York.  There, the Court concluded that specific personal jurisdiction did not exist in California over the tort claims of non-resident plaintiffs. Id. at 264–66.  The Court did not, however, decide "whether its opinion . . . would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there." Id. at 278, n. 4.  Many courts have concluded that Bristol-Myers does not extend to federal, nationwide class actions, see, e.g., Williams v. NIBCO Inc., No. SA-20-cv-0048-JKP-RBF, 2021 WL 1069044, at *4 (W.D. Tex. Mar. 18, 2021); Mussat v. IQVIA, Inc., 953 F.3d 441, 443 (7th Cir. 2020); Farmer v. Walmart, Inc., No. 23-cv-00397-MIS-KRS, 2024 WL 1539789, at *10 (D.N.M. Apr. 9, 2024) (observing that while "most courts to address the issue have concluded that the holding in Bristol-Myers does not apply to federal class actions . . . [s]ome courts have concluded the opposite"), but the Northern District of Texas is not among them, and the Fifth Circuit has explicitly noted that this remains an open question, see Cruson v. Jackson Nat'l Life Ins. Co., 954 F.3d 240, 247 n.4 (5th Cir. 2020)

8

(observing that "[t]o date, courts have split on how Bristol-Myers applies to class actions brought in federal court" but not deciding the issue). To the extent that there remains uncertainty about this issue, it counsels against transfer. See, e.g., Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc., 614 F. Supp. 2d 772, 780–81 (E.D. Tex. 2009). The Court, nevertheless, assumes (without deciding) for purpose of this motion that personal jurisdiction would exist in Texas.

### 1.   *Private Interest Factors Do Not Strongly Favor Transfer*

The convenience of witnesses is "[p]robably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer." Ondis, 480 F. Supp. 2d at 437 (internal quotation marks omitted and alteration in original). In considering this factor, courts look at "the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify." Fed. Ins. Co. v. XTRA Intermodal, Inc., No. 14-cv-14010-ADB, 2015 WL 4275181, at *5 (D. Mass. July 15, 2015) (internal citation and quotation marks omitted). "In analyzing this factor, the court is ordinarily concerned with the location of witnesses who are not parties or employees of the parties." Bos. Post Partners II, LLP v. Paskett, No. 15-cv-13804-FDS, 2016 WL 3746474, at *10 (D. Mass. July 8, 2016); see Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 71 (D. Mass. 2001) (noting that if "the persuasion of an employer who is a party to the action can secure the appearance of witnesses regardless of the location of forum, that factor diminishes in importance").

AEIC identifies three potential witnesses, each of whom live in Texas: Joshua Rodriguez, the Property Loss Field Specialist who determined the payout on the Stanleys' claim; Joe Ellis, the third-party adjuster who inspected the Stanleys' property and a representative from the roofing company who performed the repairs on the Stanleys' property. D. 23 at 7–8. But AEIC has not adequately established that their testimony, which apparently would concern the damage to the

9

Stanleys' property and estimated repair costs, will be needed.[2] Id. at 7–9. As the complaint makes clear, Plaintiffs "do not dispute the amount of loss as determined by [AEIC]." D. 27 ¶ 32. Instead, this lawsuit concerns whether it was appropriate for AEIC to depreciate labor when it calculated actual cash value. See id. ¶¶ 2, 4, 25, 54, 58, 60; Mitchell v. State Farm Fire & Cas. Co., 327 F.R.D. 552, 562–63 (N.D. Miss. 2018) (recognizing that a labor depreciation claim "does not require inquiry into the reasonableness of the disputed charges or payments . . . [t]he focus is the policy entered into between [the insurer] and members of the proposed class"), aff'd, 954 F.3d 700 (5th Cir. 2020). AEIC has also failed to suggest any defense that it intends to raise that would revolve around testimony from these witnesses. See D. 23 at 7–9; D. 31 at 5. Even if their testimony is needed, AEIC has not made any "showing that the cost of bringing its witnesses to Massachusetts will be unduly burdensome, nor that any of its witnesses are unwilling or unable to appear." E.E.O.C. v. Tex. Roadhouse, Inc., No. 11-cv-11732-DJC, 2012 WL 5894910, at *2 (D. Mass. Nov. 9, 2012).

AEIC notes that "physical evidence" and records and documents are located in Texas. D. 23 at 9. But even if relevant evidence is located in the Northern District of Texas, transfer of this case there would not substantially decrease the costs associated with discovery. The parties do not appear to dispute that AEIC stores its documents electronically. See D. 28 at 7 n.4 (citing D. 28-

---

[2] AEIC likens this case to this Court's decision in Pierce v. Biogen U.S. Corp. 18-cv-12510-DJC, 2019 WL 2107278, at *1 (D. Mass. May 14, 2019). D. 23 at 8 (citing Pierce, 2019 WL 2107278, at *4). There, the plaintiff had filed a lawsuit in the District of Massachusetts alleging civil rights violations – all of which occurred in Alabama – against Biogen, a national company headquartered in Massachusetts. Pierce, 2019 WL 2107278, at *1. Noting that more witnesses lived in Alabama than in other states, this Court concluded the convenience of witnesses weighed slightly in favor of transferring the case to Alabama. Id. at *4. As discussed, AEIC has not made the same showing here. While it has identified a few witnesses who live in Texas, AEIC has not established that their testimony will be needed. Nor has it shown that more relevant witnesses reside in Texas than Massachusetts.

1; D. 28-2; D. 28-3); D. 31. Riemer & Braunstein LLP v. Monroe Cap. Mgmt. Advisors LLC, No. 18-cv-12401, 2019 WL 2141821, at *6 (D. Mass. May 16, 2019) (observing the location of evidence "has become less significant in light of technological advances that allow documents to be stored and sent electronically"). Nor has AEIC established why access to the Stanleys' property will be necessary or pointed to any other necessary evidence that will not be available electronically. See Texas v. U.S. Dep't of Homeland Sec., 661 F. Supp. 3d 683, 691 (S.D. Tex. 2023) (concluding that private interest factors did not weigh in favor of transfer when defendant "pointed to no evidence that will be unavailable in an electronic format").

### 2. Public Interest Factors Counsel Against Transfer

Next, the Court turns to the connection between the issues at stake, Stanleys' chosen forum and the law to be applied in the case. The parties agree that Texas law governs the Stanleys' claims. D. 30 at 5; D. 32 at 7. Such consideration, however, does not push this factor in favor of transfer where the case presents a putative multistate class action, meaning "the law of any one state necessarily will not apply to all claims for all class members." Wiley v. Gerber Prods. Co., 667 F. Supp. 2d 171, 174 (D. Mass. 2009). AEIC asserts that "the local community in the Northern District of Texas has an interest in adjudicating localized controversies," D. 23 at 10, but does not explain why this controversy is "localized" when the purported class includes citizens of seventeen states, see D. 27 ¶ 70. Nor does AEIC acknowledge that Massachusetts has a competing interest in regulating businesses operating within its borders. See MacNaughton v. Paul Revere Life Ins. Co., 405 F. Supp. 3d 203, 207 (D. Mass. 2019) (observing that "states have an interest in ensuring that their corporations comply with governing law"); see also Ovist v. Unum Life Ins. Co. of Am., No. 17-cv-40113-TSH, 2018 WL 3853739, at *6 (D. Mass. May 2, 2018). For these reasons, AEIC has not established that Texas has any greater connection to this dispute than Massachusetts.

Plaintiffs suggest transfer is not warranted under the "first-filed" rule because the related actions in Glasner and Fassina were filed in this District before this action.  D. 28 at 17–23.  "Where, as here, actions involving similar issues and similar parties are pending in different federal district courts, 'obvious concerns' arise, including 'wasted resources because of piecemeal litigation, the possibility of conflicting judgments, and a general concern that the courts may unduly interfere with each other's affairs.'"  Ridenti v. Google LLC, 530 F. Supp. 3d 164, 167 (D. Mass. 2021) (quoting TPM Holdings, Inc. v. Intra-Gold Indus., Inc., 91 F.3d 1, 4 (1st Cir. 1996)).  "To avoid such concerns, transfer to the court of the first-filed action is generally preferred."  Id. at 168.  "In class action cases . . . because 'the settlement process can be complicated and made burdensome, and even frustrated, if two courts are attempting to deal with' the same subject matter, and because defendants might be tempted to forum shop if similar actions were allowed to proceed in different forums, courts often will weigh whether efficiency considerations warrant consolidation 'even if the claims in two separate class actions do not involve identical parties.'"  Jimenez v. Kohl's Dep't Stores, Inc., 480 F. Supp. 3d 305, 306 (D. Mass. 2020) (quoting Waithaka v. Amazon.com, Inc., 404 F. Supp. 3d 335, 350 (D. Mass. 2019)), aff'd, 966 F.3d 10 (1st Cir. 2020).

Here, the first-filed rule at least counsels against transfer.  AEIC is already before this Court in the Glasner lawsuit, which, as discussed, is also a multi-state class action concerning the key, legal issue in this case – whether AEIC's standard form policies permit withholding labor costs from an ACV payment.  Glasner, 2024 WL 1018449, at *2–3; D. 27 ¶ 8; D. 28 at 17–18.  This Court is also resolving the same issue with respect to the same seventeen states at issue here in another multi-state class action against AEIC's parent company, Liberty Mutual.  Fassina, 2024

WL 1018440, at *2–3. Transferring this case to the Northern District of Texas would waste this Court's familiarity with the claims and the relevant laws, and would risk inconsistent judgments.

For all of the aforementioned reasons, the balance of factors does not weigh in favor of allowing transfer of venue. Accordingly, the Court DENIES AEIC's motion to transfer, D. 22.

### B.     Rule 12(b)(6) Motion to Dismiss

AEIC also has moved to dismiss the FAC under Rule 12(b)(6) for failure to state a claim. D. 29. First, AEIC argues that Plaintiffs have not plausibly alleged a breach of contract because labor depreciation is permitted under their insurance policy and under Texas law. D. 30 at 6–9. Second, AEIC argues that the Plaintiffs' declaratory judgment claim fails for the same reason. Id. at 9.

#### 1.     Breach of Contract Claim

As referenced above, the parties agree that Texas law governs the Stanleys' claims. Id. at 5; D. 32 at 7. To prove a breach of contract under Texas law, a plaintiff must show "(1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach." USAA Tex. Lloyds Co. v. Menchaca, 545 S.W.3d 479, 501 n.21 (Tex. 2018).

AEIC argues Plaintiffs cannot establish nonperformance because the applicable policy language "expressly permits the application of depreciation as to both 'materials' and 'labor' costs in determining 'actual cash value.'" D. 30 at 6–7. Plaintiffs insist that AEIC's policy does not unambiguously allow labor depreciation. D. 32 at 7–12. "[T]he interpretation of an insurance policy is a question of law for a court to determine." Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co., No. 19-cv-2682-BH, 2022 WL 209276, at *9 (N.D. Tex. Jan. 24, 2022), reconsideration

13

denied, No. 19-cv-2682-BH, 2022 WL 1102861 (N.D. Tex. Apr. 13, 2022) (quoting Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC., 620 F.3d 558, 562 (5th Cir. 2010)). When analyzing an insurance policy, courts "give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." RSUI Indem. Co. v. The Lynd Co., 466 S.W.3d 113, 118 (Tex. 2015). Courts are also "mindful of other courts' interpretations of policy language that is identical or very similar to the policy language at issue." Id.

If the parties "offer conflicting constructions of [a policy provision]" and "both constructions present reasonable interpretations of the policy's language, we must conclude that the policy is ambiguous." Id.; see Sims v. Allstate Fire & Cas. Ins. Co., 650 F. Supp. 3d 540, 545 (W.D. Tex. 2023) (noting that the "[d]etermination [of] whether a term is ambiguous is a legal question"). "In that event, 'we must resolve the uncertainty by adopting the construction that most favors the insured.'" RSUI Indem., 466 S.W.3d at 118 (quoting Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991)).

The policy language here defines ACV as "the cost of materials and labor that would be necessary to repair the damage, less reasonable deduction for wear and tear, deterioration and obsolescence." D. 30-1 at 32. According to AEIC, "[t]his language leaves no ambiguity regarding whether labor cost will be depreciated," D. 30 at 6, but this Court previously analyzed this exact policy language (there under Maryland law) and concluded otherwise. Fassina, 2024 WL 1018440, at *10 (interpreting a policy that defined ACV as the "cost of materials and labor . . . less reasonable deduction for wear and tear, deterioration and obsolescence"). Although AEIC disputes that this Court's holding in Fassina controls this case, see D. 36 at 7–10, similar to the defendant in Fassina, AEIC supplies no Texas authority "indicating that a reasonably prudent

14

layperson would construe a 'reasonable deduction for wear and tear, deterioration and obsolescence' to encompass labor costs, particularly where, as here, the antecedent clause defines ACV to include the 'cost of . . . labor that would be necessary to repair the damage' and the subsequent clause makes no similarly specific reference to labor," see id.; see also Cortinas v. Liberty Mut. Pers. Ins. Co., No. SA:22-cv-00544-OLG, 2023 WL 11826495, at *2–3 (W.D. Tex. Mar. 14, 2023).

As this Court concluded in Fassina, Texas law does not unambiguously allow labor depreciation absent contract language expressly permitting the practice. See Fassina, 2024 WL 1018440, at *7; compare Tolar v. Allstate Tex. Lloyd's Co., 772 F. Supp. 2d 825, 831–32 (N.D. Tex. 2011) (suggesting that labor costs may be depreciable from ACV payments), with Sims v. Allstate Fire & Cas. Ins. Co., 650 F. Supp. 3d 540, 545–46 (W.D. Tex. 2023) (concluding that "the term 'actual cash value,'" which was not defined by the subject policies, "does not include depreciation of anticipated labor costs") and Cortinas, 2023 WL 11826495, at *3 (concluding that plaintiffs had stated plausible claims regarding same).[3]  Because the Stanleys have, therefore, plausibly alleged a breach of contract, AEIC's motion to dismiss this claim is denied.

    2.    *Declaratory Judgment Claims*

The Declaratory Judgment Act gives federal courts the discretion to declare the parties' rights. See 28 U.S.C. § 2201 *et seq*. A request for declaratory relief "is moot if no 'substantial controversy of sufficient immediacy and reality' exists 'to warrant the issuance of a declaratory

---

[3] AEIC attempts to distinguish Sims, 650 F. Supp. 3d at 545 and Cortinas, 2023 WL 11826495, at *2, which interpreted policies which did not define ACV, by suggesting that the policy language at issue in this case, which does define ACV, unambiguously permits labor depreciation. D. 36 at 2–3. But as discussed above, the AEIC policy's definition of ACV does not unambiguously permit labor depreciation.

judgment.'" Bos. Bit Labs, Inc. v. Baker, 11 F.4th 3, 9 (1st Cir. 2021) (quoting Town of Portsmouth, R.I. v. Lewis, 813 F.3d 54, 59 (1st Cir. 2016)). Plaintiffs' declaratory judgment claim mirrors their breach of contract claim§. Thus, for the reasons already discussed, dismissal of the declaratory judgment claims also is not warranted under Rule 12(b)(6).

## VI.   Conclusion

For these reasons, the Court DENIES AEIC's motion to transfer, D. 22, and DENIES AEIC's Rule 12(b)(6) motion to dismiss, D. 29.

**So Ordered.**

/s Denise J. Casper
United States District Judge