UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ROY STANLEY and GAIL STANLEY, individually and on behalf of others similarly situated, | ) ) ) ) ) | |
| Plaintiffs | ) ) ) | |
| v. | ) ) ) | Case No. 24-cv-10622-DJC |
| AMERICAN ECONOMY INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER**

**CASPER, C. J.**                                                                                    **January 26, 2026**

**I.     Introduction**

Plaintiffs Roy Stanley and Gail Stanley (collectively, "the Stanleys" or "Plaintiffs") filed this lawsuit individually and on behalf of others similarly situated against Defendant American Economy Insurance Company ("AEIC"), alleging breach of contract (Count I) and seeking declaratory judgment and relief (Count II). D. 27. AEIC has moved for summary judgment as to the Stanleys' claims under Fed. R. Civ. P. 56(a). D. 51. For the reasons stated below, the Court ALLOWS AEIC's motion for summary judgment. Id.

**II.    Standard of Review**

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the

1

outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sánchez v. Alvarado, 101 F. 3d 223, 227 (1st Cir. 1996)). The movant "bears the burden of demonstrating the absence of a genuine issue of material fact." Carmona v. Toledo, 215 F. 3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor," Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F. 3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (alteration in original) (quoting Anderson, 477 U.S. at 249). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F. 3d 20, 25 (1st Cir. 2009).

**III.    Factual Background**

The following facts are drawn from AEIC's statement of undisputed material facts in support of summary judgment, D. 53, the Stanleys' additional statement of facts, D. 57, and AEIC's response, D. 63. The facts are undisputed unless otherwise indicated.[1]

The Stanleys, citizens and residents of Texas, own a residence in Texas that was insured, at all relevant times, by AEIC, D. 53 ¶¶ 1, 3, a subsidiary of Liberty Mutual® Holding Company, Inc. ("Liberty"), D. 27 ¶ 14. On or around May 10, 2021, the Stanleys' residence sustained damage for which the Stanleys timely submitted an insurance claim to AEIC on October 7, 2022. D. 53 ¶

---

[1] The Stanleys do not dispute any facts included in AEIC's statement of facts, D. 53, aside from those included in paragraphs four, five and seven, D. 57 at 2 & n.1.

2; D. 53-1 ¶ 5. The Stanleys' loss settlement provision under their AEIC policy, in relevant parts, is as follows:

> 5. Loss Settlement. Covered property losses are settled as follows:
>
> > a. Replacement Cost. Property under Coverage A or B, including fences, at replacement cost . . . subject to the following:
> >
> > (1) We will pay the full cost of repair or replacement, but not exceeding the smallest of the following amounts:
> >
> > \* \* \*
> >
> > > c) The full amount actually and necessarily incurred to repair or replace the damaged building or fence as determined shortly following the loss;
> >
> > \* \* \*
> >
> > (3) If the cost to repair or replace is $2,500 or more, we will pay the difference between actual cash value and replacement cost only when the damaged or destroyed property is repaired or replaced.
> >
> > (4) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis . . . You may still make claim on a replacement cost basis by notifying us of your intent to do so within 180 days after the date of loss.

D. 53-1 at 50 (emphasis omitted). On October 28, 2022, AEIC paid the Stanleys an actual cash value ("ACV") payment of $5,622.61 based upon a Symbility® estimate prepared by AEIC's claims handler. D. 57 ¶¶ 5, 8; D. 63 ¶¶ 5, 8; see D. 48-1 ¶ 5. The ACV was calculated using the replacement cost less depreciation ("RCLD") methodology, under which AEIC calculated the estimated RCV at $14,733.75 and then subtracted depreciation to calculate the ACV of $7,822.61 less the Stanleys' $2,200 deductible. D. 57 ¶ 9; D. 63 ¶ 9. After receiving their initial ACV payment, the Stanleys hired a public adjuster and submitted a request for a supplement ACV payment. D. 53 ¶ 6; D. 53-1 ¶ 6. AEIC issued a supplemental ACV payment to the Stanleys on November 8, 2022, D. 57 ¶ 6; D. 63 ¶ 6; D. 48-1 ¶ 5, also calculated using the RCLD methodology, D. 57 ¶¶ 10-11; D. 63 ¶¶ 10-11. Of the amount depreciated from their ACV payments, AEIC depreciated $3,583.60 in "estimated future repair labor" as determined by AEIC through

3

Symbility®.  D. 57 ¶ 12; D. 63 ¶ 12.  After receiving both ACV payments, the Stanleys made repairs and requested the replacement cost value ("RCV") of their claim.  D. 53 ¶¶ 8-10.  On January 19, 2023, AEIC issued the Stanleys a RCV payment of $8,335.74.  D. 57 ¶ 13; D. 63 ¶ 13; D. 48-1 ¶ 5.

**IV.    Procedural History**

On March 13, 2024, the Stanleys filed a complaint against AEIC individually and on behalf of others similarly situated, D. 1, and filed the operative amended complaint on August 13, 2024, D. 27.  AEIC now has moved for summary judgment as to the Stanleys' individual claims.  D. 51.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 67.

**V.    Discussion**

*1.    Count I:  Breach of Contract Claim*

In Count I, the Stanleys allege that AEIC breached its insurance policy by depreciating labor costs from their ACV payments.  D. 27 ¶¶ 84-96.  The parties agree that Texas law governs the Stanleys' claims.  D. 52 at 6; see D. 56 at 3.  "Where both parties agree on the proper substantive law to be applied, there is generally no need to engage in further choice-of-law analysis." Scottsdale Ins. Co. v. United Rentals (N. Am.), Inc., 152 F. Supp. 3d 15, 19 (D. Mass. 2015).  But even if the parties did not consent to Texas law, the insurance policy at issue covered property located in Texas.  D. 53 ¶ 1.  Texas, therefore, has the most significant relationship to the contract and Texas law applies.  See Fine v. Guardian Life Ins. Co. of Am. & Park Ave. Sec., 450 F. Supp. 3d 20, 31 (D. Mass. 2020).  To prove a breach of contract under Texas law, a plaintiff must show "(1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the

breach." USAA Tex. Lloyds Co. v. Menchaca, 545 S.W.3d 479, 501 n.21 (Tex. 2018). AEIC moves for summary judgment on the grounds that the Stanleys have failed to establish breach and damages.[2] D. 52 at 6-12.

        a)        The Stanleys Have Established Breach

The Stanleys allege that AEIC owed them a contractual duty to "pay [them] the ACV of their claims," D. 27 ¶ 89, and that AEIC breach this duty by "withholding [] labor costs in calculating ACV payments due pursuant to the RCLD methodology and in the absence of a labor depreciation permissive form," id., i.e., provisions expressly permitting labor depreciation. Under Texas law, a defendant breaches a contractual duty when he "fail[s] to perform or tender performance as the contract required." USAA Tex. Lloyds Co., 545 S.W.3d at 501 n.21. AEIC contends that the Stanleys cannot establish breach as a matter of law because AEIC's payment obligation was "determined after the Stanleys actually repaired their home, and the amount of the payment obligation was based on what was actually and necessarily incurred in the actual repair work" which AEIC fulfilled by paying the Stanleys' requested RCV "in full." D. 52 at 6-9; see D. 53 ¶¶ 11-12.

---

[2] Contrary to the Stanleys' assertion, D. 56 at 5-8, AEIC's summary judgment motion does not seek an advisory opinion. Although "[c]ourts generally refuse to entertain motions for partial summary judgment on damages where a party's liability has not yet been determined," Stormo v. State National Insurance Company, No. 19-cv-10034-FDS, 2021 WL 4973835, at *2 (D. Mass. Oct. 26, 2021) (collecting cases), "'[a] court may grant summary judgment as to damages following a determination on liability,'" id. at 2 n.3 (citing City of New York v. Golden Feather Smoke Shop, Inc., No. 8-cv-03966-CBA-JMA, 2013 WL 3187049, at *33 (E.D.N.Y. June 20, 2013) (emphasis omitted)). Here, contrary to the Stanleys' claim that "AEIC's motion does not seek to resolve whether AEIC breached its policy forms," D. 56 at 5 (emphasis omitted), AEIC challenges both the breach element, D. 52 at 6-9, and the damages element, id. at 9-12, of the Stanleys' breach of contract claim and having considered the briefing and argument from both parties, the Court addresses both matters here.

"[T]he interpretation of an insurance policy is a question of law for a court to determine." Pogo Res., LLC v. St. Paul Fire & Marine Ins. Co., No. 19-cv-2682-BH, 2022 WL 209276, at *9 (N.D. Tex. Jan. 24, 2022) (quoting Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC., 620 F.3d 558, 562 (5th Cir. 2010)), reconsideration denied, No. 19-cv-2682-BH, 2022 WL 1102861 (N.D. Tex. Apr. 13, 2022). When analyzing an insurance policy, courts "give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage." RSUI Indem. Co. v. The Lynd Co., 466 S.W.3d 113, 118 (Tex. 2015). If the parties "offer conflicting constructions of [a policy provision]" and "both constructions present reasonable interpretations of the policy's language, we must conclude that the policy is ambiguous." Id.; see Sims v. Allstate Fire & Cas. Ins. Co., 650 F. Supp. 3d 540, 545 (W.D. Tex. 2023) (noting that the "[d]etermination [of] whether a term is ambiguous is a legal question"). "In that event, 'we must resolve the uncertainty by adopting the construction that most favors the insured.'" RSUI Indem., 466 S.W.3d at 118 (quoting Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 1991)).

The Stanleys' loss settlement provision states that for residences, "[c]overed property losses are settled . . . at replacement cost." D. 53-1 at 50; see id. at 39. Section 5(a)(3) of the replacement cost loss settlement provisions states that "[i]f the cost to repair or replace is $2,500 or more, [AEIC] will pay the difference between [ACV] and replacement cost only when the damaged or destroyed property is repaired or replaced." Id. at 50. As the Stanleys note, D. 57 at 2-3, this language is characteristic of a "traditional" two-step loss settlement process for claims in which the cost to repair or replace is $2,500 or more under which AEIC is first obligated to pay ACV and then obligated to pay the difference between ACV and RCV only if an insured makes repairs or replacements in accordance with its RCV provision, see Arnold v. State Farm Fire &

Cas. Co., No. 17-cv-00148-TFM-C, 2020 WL 6882748, at *1 (S.D. Ala. Nov. 23, 2020) (recognizing two-step settlement process whereby "[u]ntil actual repair or replacement is completed, [the insurer] will pay only the actual cash value" and "[w]hen the repair or replacement is actually completed [the insurer] will pay the covered additional amount [the insured] actually and necessarily spend[s] to repair or replace"); Hicks v. State Farm Fire & Cas. Co., 965 F.3d 452, 466 (6th Cir. 2020) (McKeague, J., concurring in the judgment in part and dissenting in part) (recognizing two-step loss settlement process under identical language); see also RSUI Indem. Co., 466 S.W.3d at 118 (noting that courts should be "mindful of other courts' interpretations of policy language that is identical or very similar to the policy language at issue"). To the extent there is any ambiguity about this provision, communications from AEIC to the Stanleys and testimony from Liberty's claim adjusters further support this construction, see D. 57-3 at 20-21 (issuing the Stanleys' ACV payment and informing the Stanleys that they can request recoverable depreciation "[o]nce the repairs are completed or the items have been replaced"); Brown Dep., D. 57-5 at 2-3 (testifying that ACV is the minimum payment an insured is due and that an insured may recover costs depreciated at the ACV stage if they later make a RCV claim); Bailey Dep., D. 57-4 at 2 (same); see also R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc., 596 S.W.2d 517, 519 (Tex. 1980) (explaining that extraneous materials can be considered to interpret a provision if it is ambiguous). As it is undisputed that the cost to replace or repair for the Stanleys' claim was over $2,500, D. 57 ¶¶ 13-14; D. 63 ¶¶ 13-14, AEIC was obligated to issue the Stanleys an ACV payment as "the first and minimum payment owed" under the terms of their loss settlement provision. See D. 57 at 2-3; D. 53-1 at 50.

AEIC does not offer a construction of Section 5(a)(3), but instead points to Section 5(a)(4) of the loss settlement provision and contends that its payment obligation "was determined after the

7

Stanleys actually repaired their home, and the amount of the payment obligation was based on what was actually and necessarily incurred in the actual repair work" because the Stanleys did not "disregard the replacement cost loss settlement provisions and make a claim under this policy . . . on an [ACV] basis." D. 52 at 6-7. As an initial matter, the parties do not appear to dispute that the Stanleys made a claim on a replacement cost basis or that their claim is governed by the replacement cost loss settlement provisions. See D. 52 at 6-7; D. 57 at 3. Moreover, it is undisputed that the two-step process outlined in Section 5(a)(3) is what occurred in the Stanleys' case, as AEIC first issued the Stanleys ACV payments, D. 57 ¶¶ 5-6; D. 63 ¶¶ 5-6, and later issued the Stanleys a RCV payment for recoverable depreciation, including depreciated labor costs, after the Stanleys repaired their property, D. 53 ¶ 8; D. 57 ¶¶ 12-13; D. 63 ¶¶ 12-13.

Having determined that AEIC had a contractual duty to pay the Stanleys the ACV of their claim, the Court turns to whether the Stanleys' policy allows AEIC to depreciate labor costs. As explained previously and incorporated here, D. 38 at 15, "Texas law does not unambiguously allow labor depreciation absent contract language expressly permitting the practice," id. at 15 (citing Fassina v. Liberty Mut. Fire Ins. Co., No. 22-cv-11466-DJC, 2024 WL 1018440, at *7 (D. Mass. Mar. 8, 2024)); compare Tolar v. Allstate Tex. Lloyd's Co., 772 F. Supp. 2d 825, 831-32 (N.D. Tex. 2011) (suggesting that labor costs may be depreciable from ACV payments), with Sims, 650 F. Supp. 3d at 545-46 (concluding that "the term 'actual cash value,'" which was not defined by the subject policies, "does not include depreciation of anticipated labor costs") and Cortinas v. Liberty Mut. Pers. Ins. Co., No. 22-cv-00544-OLG, 2023 WL 11826495, at *3 (W.D. Tex. Mar. 14, 2023), report and recommendation adopted, No. 22-cv-00544-OLG-HJB, 2025 WL 1062093 (W.D. Tex. Apr. 8, 2025) (concluding that plaintiff had stated plausible claims regarding same). The Stanleys' policy defines ACV as "the cost of materials and labor that would be necessary to

repair the damage, less reasonable deduction for wear and tear, deterioration and obsolescence." D. 53-1 at 36. This language is ambiguous as to whether "'reasonable deduction for wear and tear, deterioration and obsolescence' . . . 'encompass[es] labor costs,'" D. 38 at 14-15 (citing Fassina, 2024 WL 1018440, at *10 (interpreting a policy that defined ACV as the "cost of materials and labor . . . less reasonable deduction for wear and tear, deterioration and obsolescence"); Cortinas, 2023 WL 11826495, at *2-3. As explained above, this ambiguity must be resolved in favor of the Stanleys. RSUI Indem. Co., 466 S.W.3d at 118. Construing the policy as such, "[ACV] . . . does not include depreciation of anticipated labor costs." Sims, 650 F. Supp. 3d at 545-46; Cortinas, 2023 WL 11826495, at *3. Nor does AEIC point to any other provision under the Stanleys' policy expressly permitting labor depreciation. See D. 52 at 6-10. The Stanleys' policy thus did not permit AEIC to depreciate labor costs from the Stanleys' ACV payments. As there is no dispute that AEIC depreciated labor costs from the Stanleys' ACV payments, D. 57 ¶ 12; D. 63 ¶ 12, the Stanleys have established that AEIC breached its contractual duty to pay them the ACV of their claim as a matter of law.

AEIC's contend, however, that because the Stanleys subsequently recovered the RCV of their claim "in full," the Stanleys cannot establish breach. D. 52 at 6-9; see D. 53 ¶¶ 8-11; D. 57 at 2 n.1. In support of its argument, AEIC relies primarily upon Cortinas. In Cortinas, a plaintiff filed a claim with her insurer for property damage and was issued an ACV payment which withheld labor costs. Cortinas v. Liberty Mut. Pers. Ins. Co., No. 22-cv-00544-OLG, 2025 WL 233589, at *6 (W.D. Tex. Jan. 13, 2025). The plaintiff later recovered RCV and subsequently sued her insurer for breach of contract alleging that her insurer breached her insurance policy by depreciating labor costs from her ACV payment. Id. Citing Stiers, the court concluded that "[the insurer]'s payment of RCV to [the plaintiff] . . . 'moot[s] any [initial] ACV underpayment,' because 'the actual costs

9

of repair cap[ped] . . . [its] obligation[s].'" Id. at *8 (citing Stiers v. State Farm Ins., No. 11-cv-437, 2012 WL 2405982, at *4-5 (E.D. Tenn. June 25, 2012)); see Stiers, 2012 WL 2405982 at *5 (concluding that because plaintiffs "were paid on a replacement cost basis . . . [the insurer's] payment obligation is the amount they actually and necessarily spent to complete the repairs" and as plaintiffs were paid "the difference between the ACV payment and the actual repair costs, a full replacement cost payment will render moot any ACV underpayment").³  AEIC argues that Cortinas and Stiers are dispositive here because, similar to those cases, AEIC's payment obligation was determined not when they issued their "initial" ACV payments, but after the Stanleys repaired their home, and because the Stanleys were paid RCV "in full," AEIC satisfied its contractual obligations under the policy, regardless of whether the "initial" ACV payment was deficient. D. 52 at 8-9; see D. 53 ¶¶ 11-12.  Alternatively, AEIC contends that even if its subsequent RCV payment did not moot any alleged ACV underpayment, the Stanleys cannot establish damages for the same reason.  D. 52 at 9-12.

As the focus of the Stanleys' breach of contract challenge is AEIC's alleged "withholding of labor costs in calculating ACV payments due pursuant to the RCLD methodology and in the absence of a labor depreciation permissive form," D. 27 ¶ 89, not the underpayment of ACV, see id. ¶ 63, the Court is not persuaded that AEIC's subsequent RCV payment shields AEIC from the Stanleys' breach challenge.  See Schroeder v. Progressive Paloverde Ins. Co., 146 F.4th 567, 578 (7th Cir. 2025) (explaining that in similar breach of contract cases, some "courts have defined the term 'actual cash value' using a formula, then held that the insurer had a contractual duty to

---

³ AEIC's reliance on Dow is misplaced as Dow does not address the issue of whether payment of RCV moots a defendant's obligation to pay ACV according to a specific methodology. See Dow v. Safeco Ins. Co. of Am., No. 23-cv-2641, 2025 WL 1110742, at *2 (9th Cir. Apr. 15, 2025) (holding that insurer did not violated contract under Montana law because insurer was not required to pay ACV based on actual repair costs as determined following RCV repair).

calculate actual cash value in accordance with this formula, independent of a contractual duty to pay insureds the actual cash value of losses") (citing Stuart v. State Farm Fire & Cas. Co., 910 F.3d 371, 373-76 (8th Cir. 2018); Hicks, 965 F.3d at 456, 459; Mitchell v. State Farm Fire & Cas. Co., 954 F.3d 700, 705-07, 710 (5th Cir. 2020)). As explained below, AEIC's RCV payment argument instead finds better footing in its challenge to the damage element of the Stanleys' breach of contract claim. See D. 52 at 9-10; see also Cortinas, 2025 WL 233589, at *6 (discussing Stiers in the context of plaintiffs' inability to prove damages). Accordingly, even with its subsequent RCV payment, AEIC breached its contractual duty to pay the ACV of the Stanleys' insurance claim by depreciating labor costs from their ACV payments.

For the aforementioned reasons, the Stanleys have established breach of contract as to Count I.

b) The Stanleys Have Not Established Damages

The Stanleys allege that they have incurred damages from AEIC's breach in the form of "the amount of labor depreciation still withheld from their ACV payments . . . plus interest during the period of withholding." D. 27 ¶ 64; see id. ¶¶ 91-92. AEIC argues that the Stanleys cannot establish damages because they were paid RCV, which included the labor costs depreciated from their ACV payments, D. 52 at 9-10; see D. 53 ¶¶ 11-12, and they cannot establish contractual damages with prejudgment interest, D. 52 at 10-12.

The Stanleys contend that, despite being paid RCV "in full," see D. 53 ¶¶ 11-12, they have not been fully paid for "outstanding principal" because AEIC's RCV payment must first be applied to the prejudgment interest that accrued on the depreciated labor costs during the period between AEIC's issuance of their ACV payments and AEIC's issuance of their RCV payment pursuant to the "United States Rule." D. 56 at 17-19 (citing Brainard v. Trinity Univ. Ins. Co., 216 S.W.3d

11

809, 816 (Tex. 2009) (explaining that under the United States Rule, payments intended to resolve a debt are to be applied first to unpaid interest due and thereafter to the principal debt)). "The problem with [the Stanleys]' argument is that it is only a 'judgment' that 'earns prejudgment interest.'" Cortinas, 2025 WL 233589, at *7 (citation omitted); Kahlig Enters., Inc. v. Affiliated FM Ins. Co., No. 23-cv-50144, 2024 WL 1554067, at *4 (5th Cir. Apr. 10, 2024) (explaining that plaintiff "cannot maintain a claim for prejudgment interest against [an insurer] [when] there is no judgment against [the insurer]"). Thus, "[the Stanleys]' argument that [AEIC]'s RCV payment to [them] should first go to satisfying the accrued prejudgment interest before satisfying the principal—thereby leaving a remainder of owed but unpaid principal—necessarily fails" as "[t]here was no prejudgment interest to be satisfied in the absence of a judgment." Cortinas, 2025 WL 233589, at *7. The Stanleys, therefore, cannot establish damages with their "outstanding principal" argument.

Nor can the Stanleys satisfy the damages element of their breach of contract claim by pointing to the Texas Prompt Payment of Claims Act ("TPPCA"). The TPPCA provides "an independent statutory 'cause of action against insurers who delay paying claims,'" id. (internal citations omitted), pursuant to which "[a]n insurer liable for violation of the TPPCA must pay the amount of the claim, plus 'interest on the amount of the claim . . . as damages" at a rate of 18%, id. (citing Tex. Fin. Code § 542.060(a), (c)) (emphasis omitted). "'An insured's claim for breach of an insurance contract is "distinct" and "independent" from claims that the insurer violated its extra-contractual common-law and statutory duties,'" including TPPCA. Id. (quoting USAA Tex. Lloyds Co., 545 S.W.3d at 489) (internal quotation omitted). The Stanleys contend that they made a TPPCA claim and are entitled to damages under it. D. 56 at 11-14. AEIC argues that the Stanleys

12

cannot invoke the TPPCA because they have not pled a cause of action under TPPCA, D. 52 at 11-12, and, even if they did, they cannot satisfy a TPPCA claim, D. 62 at 15.

Even if the Stanleys had pled a TPPCA claim, they cannot use the statutory damages available for TPPCA claims to satisfy the damages element of their breach of contract claim. See Cortinas, 2025 WL 233589, at *7; see Page v. Liberty Plantation, LLC, No. 20-cv-00135, 2021 WL 3671211, at *6 (Tex. App. Aug. 18, 2021) (concluding that plaintiff cannot rely upon damages available under a distinct statute to satisfy damages element of his breach of contract claim as plaintiff "did not bring suit pursuant to this statute, instead he brought a claim for breach of contract" and "[t]hus . . . was required to submit evidence of *contractual* damages") (emphasis in original). The Stanleys have not offered any caselaw suggesting otherwise. See D. 52 at 11-14. Thus, even assuming *arguendo* that the Stanleys properly plead a TPPCA claim, the Stanleys must establish contractual damages resulting from AEIC depreciating labor costs from their ACV payments to support their breach of contract claim. As the Stanleys do not allege any contractual damages aside from the depreciated labor costs which AEIC repaid at the RCV stage, D. 53 ¶¶ 11-12, and prejudgment interest, which, as explained above, cannot satisfy the damages element of their claim, the Stanleys have not met their burden of establishing contractual damages to support their breach of contract claim.

At oral argument, the Stanleys raised, for the first time, that "upon proof of a breach, even in the absence of damages, [the Stanleys are] entitled to nominal damages" under Texas law. D. 68 at 54. As the First Circuit has "consistently held . . . except in extraordinary circumstances, arguments not raised in a party's initial brief and instead raised for the first time at oral argument are considered waived." United States v. Pizarro-Berrios, 448 F.3d 1, 5 (1st Cir. 2006); see Race v. Cambridge Health All., No. 23-cv-10143-JEK, 2025 WL 2076623, at *8 n.10 (D. Mass. July

13

23, 2025) (concluding that argument not included in summary judgment briefing and raised for the first time at oral argument is waived). As AEIC notes, D. 75 at 1, the Stanleys failed to raise this argument in their opposition. See D. 56 at 9-19.[4] Indeed, the term "nominal damages" appears nowhere in their brief. Id.[5] The Stanleys' failure to raise a nominal damages argument in their opposition does not present an extraordinary circumstance, see Ministeri v. Reliance Standard Life Ins. Co., 523 F. Supp. 3d 157, 174 (D. Mass. 2021), and although the Court granted leave for AEIC to response to the Stanleys' oral argument claim in a post-hearing supplemental brief, see D. 75, "we deem the issue to have been waived," see Piazza, 909 F.2d at 37 (citing Playboy Enterprises, Inc. v. Public Service Commission of Puerto Rico, 906 F.2d 25, 40-41 (1st Cir. 1990) (concluding that although opposing party "voluntarily responded to [a] newly-raised issue in a 'surreply' brief which we granted leave to file . . . we still find the issue waived")).

Accordingly, as the Stanleys have failed to establish the damages element to their breach of contract claim, the Stanleys' breach of contract claim fails as a matter of law.

---

[4] The Stanleys' post-hearing suggestion that AEIC had the burden to make an affirmative argument against nominal damages in their motion for summary judgment, D. 78 at 3-4, mischaracterizes the summary judgment burden on this issue. As noted above, if the moving party meets its burden of establishing that there is no genuine dispute of material fact on an issue, the non-moving party "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W., 605 F.3d at 5. Here, as explained above, AEIC has met its initial burden, thus to the extent the Stanleys relied upon a theory of nominal damages, "[i]t [wa]s [their] burden to establish, through pleading and proof, that the case is one in which nominal damages are appropriate." Loeb-Defever v. Strategic Constr., Ltd., No. 20-cv-1981, 2022 WL 2757576, at *5 (S.D. Tex. July 14, 2022).

[5] While the Stanleys note that "'Texas courts do not require a specific request for nominal damages,'" D. 78 at 3 (quoting Kamel v. Ave. Insights & Analytics LLC, No. 18-cv-422-JDK-KNM, 2020 WL 4679574, at *14 (E.D. Tex. May 5, 2020)), the Stanleys' post-hearing argument that their prayer for relief is inclusive of nominal damages is not only waived for failure to raise it in their opposition, but is also unavailing as the Stanleys cannot rest on their pleadings to meet their burden on summary judgment, see Anderson, 477 U.S. at 256.

For the aforementioned reasons, AEIC is entitled to summary judgment on Count I, the breach of contract claim.

### 2. Count II: Declaratory Judgment Claim

In Count II, the Stanleys seek "a declaration that [AEIC]'s property insurance contracts prohibit the withholding of future labor costs." D. 27 ¶ 101. AEIC moves for summary judgment on the grounds that the Stanleys lack standing and their claim is duplicative of their breach of contract claim. D. 52 at 12-18. The Court need not reach the former argument because the latter warrants dismissal.

"Pursuant to the Declaratory Judgment Act, a federal district court may, '[i]n a case of actual controversy within its jurisdiction . . . declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" Transpac Marine, LLC v. Yachtinsure Servs., Inc., 655 F. Supp. 3d 18, 28 (D. Mass. 2023) (alteration in original) (quoting 28 U.S.C. § 2201(a)). "[A] district court has 'complete discretion in determining whether and when to entertain'" a claim for declaratory judgment. Id. (internal quotation marks omitted) (quoting Zurich Am. Ins. V. Watts Regul. Co., 796 F. Supp. 2d 240, 246 (D. Mass. 2011)). Courts in this Circuit have generally exercised this discretion where the declaratory judgment claim is duplicative of other claims in the complaint. See Martorana v. Progressive Direct Ins. Co., No. 22-cv-10613-DJC, 2023 WL 2465639, at *9 (D. Mass. Mar. 10, 2023) (citations omitted) (collecting cases from other sessions of the Court that denied claims requesting declaratory judgment for being duplicative of substantive claims in the complaint). As a general matter, a claim is duplicative where it relies upon the same facts and legal arguments, see Guilfoile v. Shields Pharmacy, LLC, No. 16-cv-10652, 2021 WL 4459515, at *5 (D. Mass. Sept. 29, 2021), and "'provides [the plaintiff] with no further remedy,'" see Priddy v. ZOLL Med.

Corp., No. 23-cv-10575-IT, 2025 WL 975234, at *16 (D. Mass. Mar. 31, 2025) (citing Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237 (1st Cir. 2013)).

Here, the Stanleys seek "a declaration that [AEIC]'s property insurance contracts prohibit the withholding of future labor costs" from ACV payments. D. 27 ¶ 101. In similar fashion, the Stanleys' breach of contract claim alleges that AEIC breached their insurance contract by "unlawful[ly] withholding [] labor costs in calculating ACV payments." Id. ¶ 89. As the legal and factual bases for the Stanleys' declaratory judgment claim are identical to their breach of contract claim, these claims are duplicative. See Guilfoile, 2021 WL 4459515, at *5. Further, whereas, in resolving AEIC's summary judgment challenge to the Stanleys' breach of contract claim, the Court has concluded that the Stanleys' AEIC policy insurance contract did not unambiguously permit labor depreciation under Texas law, "[p]leading an additional cause of action provides [the Stanleys] with no further remedy." Young, 717 F.3d at 237; see O'Hara v. Standard Fire Ins. Co., No. 16-cv-12378-GAO, 2017 WL 8315886, at *7 (D. Mass. Sept. 8, 2017) (noting that "rendering a declaration would not be of any practical assistance to clarifying the merits of [plaintiff's] underlying claims where resolving the breach of contract claim will settle the principal legal issue") (citations omitted). The Court thus declines to exercise its discretion to entertain the Stanleys' declaratory judgment claim. See Guilfoile, 2021 WL 4459515, at *5 (allowing summary judgment on declaratory judgment claim where claim is duplicative of breach of contract claim); One World, LLC v. Manolakos, No. 20-cv-11837-JEK, 2025 WL 2784990, at *11 (D. Mass. Sept. 30, 2025) (granting summary judgment on declaratory judgment claim where claim was duplicative of the underlying tort claims). Accordingly, AEIC is entitled to summary judgment on the Stanleys' declaratory judgment claim, Count II.

**VI.**     **Conclusion**

For these reasons, the Court ALLOWS AEIC's motion for summary judgment. D. 51.

**So Ordered.**

/s Denise J. Casper<br>
Chief United States District Judge